# IN RE BRIEDE.

PATENTS; REISSUE; LACHES; CLAIMS; CONSTRUCTION OF PATENT STATUTE.

1. The lapse of seven months between the issue of an ordinary patent and an application for a reissue does not constitute undue delay or laches on the part of the inventor, where both he and his attorney reside abroad and are unfamiliar with the English language and with the requirements of our patent laws.

2. The oath of an applicant, filed with his application for a reissue, should count for something, and cannot be entirely ignored, but must be traversed by the Patent Office.

3. On an application for a reissue of a patent on the ground that, by mistake, the claim of such patent does not fully cover the actual invention, where it appears that the same invention is set forth in the specifications and claims of the original patent, that the applicant has exercised due diligence in discovering his mistake and returning to the Patent Office, that there are not intervening rights, and that there is no fraud, a reissue with a broader claim is permissible.

4. A claim in an application for the reissue of a patent is sustainable if it would have been sustainable if put into the original patent.

5. The consideration of a claim in an application for the reissue of a patent should be governed by the same rules as would be involved if the claim was presented by an amendment to the application as originally filed.

6. If the specifications and drawings of an application as originally filed suggest the claims made by amendment and finally allowed, such claims are valid.

7. The construction placed upon the patent statutes by the courts is favorable toward inventors having meritorious inventions, and they do not put upon them harsh or technical interpretations. They do not look with favor upon the refinements of division which lead to many patents being issued for various improvements incorporated upon a single device. They are inclined to resolve all doubts as to whether more than one invention is embraced in one patent in favor of the patentee.

No. 302.  Patent Appeals.  Submitted March 14, 1906.  Decided April 3, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents refusing to allow a claim for the reissue of a patent.
*Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. George H. Christy* for the appellant.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice DUELL delivered the opinion of the Court:

This appeal brings before us for review the correctness of the action of the Commissioner of Patents in refusing to allow appellant, Otto Briede, the following claim set forth in his application for reissue of his patent No. 741,301, October 13, 1903, for a forging machine:

"In a seamless-pipe forging machine, the combination of a mandrel capable of endwise reciprocation in both directions, and a pair of oscillatory swaging dies which, through the billet to be forged, impart to the mandrel both its forward and backward movements, each of said swages being provided with a tapering groove, said grooves tapering in the same direction, substantially as set forth."

The record discloses that on August 13, 1901, appellant, a subject of, and a resident of, the German Empire, filed an application for a patent for a new and improved forging machine.

He was represented by a German attorney residing in Berlin, Germany.  The application as presented contained four claims, but, after rejection and amendment, only one claim was left, and that an amended one.  The patent was issued October 13, 1903, and in due course must have reached the inventor or his attorney the latter part of that month.  The oath to the application for reissue was executed before a United States

consul at Cologne, Germany, on April 30, 1904. The application was filed May 17, 1904, or seven months and four days after the issue of the original patent. Taking into account the residence of the inventor and his attorney, their unfamiliarity with the English language, and the lack of familiarity with the requirements of our patent law, as sworn to, and the propriety of consulting American counsel, we consider that the inventor returned to the Patent Office with promptitude, and was in no sense guilty of laches or undue delay. Nor do we understand that the Patent Office questions this.

One new claim has been allowed, which is an implied admission that the inventor filed his application for a reissue within a reasonable time. We are equally well convinced that the appellant brought himself within the terms of section 4916 of the Revised Statutes, as interpreted by the courts, which provide for the reissue of a patent which is inoperative or invalid by reason of a defective or insufficient specification; and that "the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention." The oath filed by appellant with his application for reissue should count for something, and cannot be entirely ignored, but we think must be traversed by the Patent Office. The oath states: That deponent verily believes that the original letters patent, referred to in the foregoing petition and specification and herewith surrendered, are inoperative, for the reason that the specification thereof is defective, and that such defect consists particularly, first in a failure to make specific claim to that part of the original invention which relates to the control exercised by the oscillatory forging dies over the billet and mandrel in both their forward and backward movements while the work of forging a billet into pipe is being done;  *   *   *   and deponent further says that the errors which render such patent so inoperative arose from inadvertence and without any fraudulent or deceptive intention on the part of the deponent. The following is a true specification of the errors which it is claimed constitute such inadvertence relied upon: The omission to claim the subjectmatter of the second claim as above,  *   *   *   and that

such errors, so particularly specified, arose from your deponent's and his solicitor's lack of familiarity with the English language and the requirements of the United States patent law in respect of the formulation of claims; and that the error was not discovered until deponent endeavored to introduce his invention into use in the United States by interesting United States manufacturers in the use and development thereof; whereupon the patent with the material facts bearing thereon was referred to an American counsel, who advised deponent that the single claim of his said original patent did not fully cover deponent's actual invention; and that, on being so advised, he took promptly the necessary steps for making the present application for a reissue, and has been diligent in respect of preparing and presenting the same.

The "inoperativeness" in the present case arose from insufficient claims, and the error was caused by the failure of the solicitor and the inventor to understand what we may term the formulation of claims under our patent law. There is an utter absence of any proof in the record of any fraudulent or deceptive intent, and of any attempt to destroy any intervening rights.

If it be found that the same invention is set forth in the claim in controversy as appears from the specification and claim of the original patent, to have been the invention thereof, we are convinced that nothing else can defeat the right of appellant to the claim in issue; for, when the above condition is satisfied, and the applicant has exercised due diligence in discovering his mistake and returning to the Patent Office; and there are no intervening rights; and the error has arisen from inadvertence or mistake; and there is no fraud shown,—a reissue with a broadened claim is permissible. The case at bar, so far as any question of the right to protect the invention of the claim by a reissue (conceding the claim could have lawfully been made while the application for the original patent was pending) is involved, is governed by the decision of the Supreme Court in *Topliff* v. *Topliff,* 145 U. S. 156, 36 L. ed. 658, 12 Sup. Ct. Rep. 825. In that case, after summarizing the author-

ities relative to reissues, the court, at page 171, L. ed. page 664, Sup. Ct. Rep. page 831, enunciates the principle which governs in cases like this, and, as we understand it, the court has not since that time made any inconsistent deliverance. The court, speaking through Mr. Justice Brown, said: "To hold that a patent can never be reissued for an enlarged claim would be not only to override the obvious intent of the statute, but would operate in many cases with great hardship upon the patentee. The specification and claims of a patent, particularly if the invention be at all complicated, constitute one of the most difficult legal instruments to draw with accuracy; and, in view of the fact that valuable inventions are often placed in the hands of inexperienced persons to prepare such specifications and claims, it is no matter of surprise that the latter frequently fail to describe with requisite certainty the exact invention of the patentee, and err either in claiming that which the patentee had not in fact invented, or in omitting some element which was valuable or essential part of his actual invention. Under such circumstances, it would be manifestly unjust to deny him the benefit of a reissue to secure to him his actual invention, provided it is evident that there has been a mistake, and he has been guilty of no want of reasonable diligence in discovering it, and no third persons have in the meantime acquired the right to manufacture or sell what he had failed to claim. The object of the patent law is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute, or by the application of artificial rules of interpretation."

In the later case of *Hobbs* v. *Beach,* 180 U. S. 383, 394, 45 L. ed. 586, 592, 21 Sup. Ct. Rep. 409, the court said: "To justify a reissue, it is not necessary that the patent should be wholly inoperative or invalid. It is sufficient if it fail to secure to the patentee all of that which he has invented and claimed. The reissue was applied for so promptly that no question can arise upon the facts of this case if an attempt to cover devices

which have been patented, or, meantime, had come to the knowledge of the patentee."

It is disclosed by the record in the present case that the drawings are the same as the drawings of the patent, that there have been no changes in the specification, and that the only addition thereto is a clause which particularly describes the operation of the forging machine when it includes the mandrel and operates on a pipe blank on the mandrel. Both these parts are shown in the drawing and referred to in the specification, and there does not seem to be any serious question raised that the paragraph is warranted by the disclosure of the specification and drawing. It reads as follows: "It is obvious that, with the construction shown and described, with more particular reference to Fig. 3, the hollow piece 'u' to be forged (commonly known in the art as a billet), while being forged into a pipe, will always during the oscillatory movement of the dies 'b' and 'c' be moved by and with the dies in both directions, and that through the billet, the same endwise reciprocating motion will be transmitted to the mandrel also. And it is still further obvious that, as the diameter is reduced, it can be fed forward from time to time. Also it is obvious that the pipe so produced will be of the kind known in the art as 'seamless.' "

It further appears that certain references were cited against the claim by the examiner, but the Examiners-in-Chief held that the claim was not unpatentable for lack of inventive novelty. While this question is, therefore, not before us, we agree with their conclusion.

It appears, and it does not seem to be questioned by the Commissioner of Patents, that there was due diligence in applying for the reissue, that there were no intervening rights, no changes in the drawing, no lack of patentability by reason of the prior art, and no enlargement or change in the specification filed with the application for the reissue. We believe that there is shown a case of the existence of a mistake on the part of the inventor, and an absence of fraud or deception.

The serious question in the case is whether the claim in controversy is for the same invention as the original patent. If it be, then the fact that it is presented in an application for a

reissue, and not during the application for the original patent, is of no importance under the facts as disclosed by the record, and the law applicable thereto. If the claim would have been sustainable had it been put into the original patent, there would be no valid reason for holding it not sustainable should it appear in the reissue patent.

When the objection to a claim, based on the ground that it is not allowable because first presented in a reissue, is untenable, unless it be found to be for a different invention than that of the original patent, it would seem that the same rules would apply as would be involved if the claim was presented by an amendment to the application as originally filed. The paragraph added to the specification of the reissue application having been admitted, it would follow that it would have been admitted by an amendment to the specification of the original application. Would the specification thus amended, taken in connection with the drawings, have warranted the claim? If so the claim should now be allowed.

If the specification and drawings of an application as originally filed suggest the claims, made by amendment and finally allowed, such claims are valid. *Hobbs* v. *Beach, supra,* clearly enunciates this rule. In that case the defense insisted that the claims had been unlawfully expanded pending interference proceedings. It appeared that during the five years or more that the application was pending the specification and claims as originally filed were amended, and also new claims added. The court said: "His experience in this litigation" (referring to the interference) "had doubtless apprised him of the weak points in his prior specification and claims, and it was perfectly competent for him to restate them, provided his patent was not essentially broadened to cover intervening devices." Later on the court agreed with a statement made by the court below, that "the original drawings and specifications *suggest* the claims finally made." Do the drawings and specification of Briede's application *suggest* the claim in question? If so he is entitled to the claim.

The "same invention," as that phase is used in the reissue statute, "refers to whatever invention was described in the orig-

inal letters patent, and appears therein to have been intended to be secured thereby." Walker, Patents, § 233; *Parker & W. Co.* v. *Yale Clock Co.* 123 U. S. 87, 31 L. ed. 100, 8 Sup. Ct. Rep. 38.

In the case last cited there was new matter introduced into the specification of the reissue patent, and claims were based upon such matter. The original claims related to one part of the machine, the reissue claims to another part. In *Freeman* v. *Asmus,* 145 U. S. 226, 36 L. ed. 685, 12 Sup. Ct. Rep. 939, also relied upon by the Patent Office tribunals, the specification of the reissue patent was amplified, parts were eliminated so as to constitute a broad definition upon which to found first claim, which was a new one and the only one alleged to be infringed. It was the familiar case of an attempt first to alter materially the specification, and then insist upon a broad interpretation of the claim by referring back to the specification. As the court said: "Asmus waited until experience and reasoning had shown him the broadest formula in which to express the claims of his patent so as to cover all possible modifications." The case at bar is entirely different from either of these cases. An examination of the facts of the cases where the courts have held, both in original and reissue patents, that claims were invalid for the single reason that they were not for the same invention as that originally disclosed, indicates that each ruling has been based upon the ground that the specification has been expanded by the introduction of new matter upon which the new claims were built, or the claims were for parts of the invention other than the parts for which claims were originally made, or machine claims were changed to method claims, or the reverse, or the question of the "same invention" was affected by intervening rights, or laches, or fraud, or, in reissue cases, by an absence of the necessary inadvertence, accident, or mistake. In the present cases none of these reasons apply.

As we have said, there is no new matter in the specification, and the drawings are the same as in the original patent. The invention is for a forging machine, and it is intended to be used to forge bar or tubes, and is capable of varying their diameter

while forging them. The salient feature of the machine is a pair of grooved, oscillating swaging dies. These are pivoted in a fixed frame, and by means of a crank shaft the oscillatory motion is imparted to them. The crank shaft is journaled in a bearing, and means are provided for moving the bearing whereby the distance between the crank shaft and the pivots of the swaging dies is changed. This is the device in its entirety, save that when tubes are to be treated a mandrel is employed as shown in figure 3 of the drawings. The machine in its entirety, except that the mandrel is omitted, is the subject-matter of the claim of the original patent. A separate paragraph of the specification (lines 20 to 52) describes the part of the machine which is the subject of the appealed claim. It does not include the adjusting device which is later on described, and which, as we have stated, is an element, or part, of the claim of the patent. The same machine and the same essential part of it is found in both claims. The new claim omits the adjusting feature of the original claim, and in express terms embodies as an element the mandrel which is recited to be capable of endwise reciprocation in both directions. This is obvious, and it is also obvious that the oscillatory dies through the billet to be forged will impart to the mandrel its backward and forward movements. In the one claim the swaging dies are claimed with the adjusting mechanism. In the other claim the same swaging dies having certain limiting characteristics are claimed with the mandrel, with certain obvious limitations upon its movements.

The absence of any device for feeding forward the mandrel and the tube on the mandrel is of no consequence for it could be fed by hand. No support other than that afforded by the dies is shown for the mandrel and tube; but for a small mandrel and tube none would be necessary, and for larger ones a suitable support could be readily provided.

Had the claim in controversy been submitted while the application for the original patent was pending, we cannot believe that it would have been refused as not being for the same invention as that described and shown. If so it would have

been a manifest error. Rather, we think, the office approached its consideration with the idea that it was an unwarranted attempt to obtain a broadened claim by means of a reissue, and with the mistaken idea that such a reissue was not permissible.

The construction placed upon the patent statutes by the courts is favorable toward inventors having meritorious inventions, and they do not put upon them harsh or technical interpretations. They do not look with favor upon the refinements of division which lead to many patents being issued for various improvements incorporated upon a single device. They are inclined to resolve all doubts as to whether more than one invention is embraced in one patent in favor of the patentee. *Bennet* v. *Fowler,* 8 Wall. 445, 19 L. ed. 431. We do not now recall an instance where a patent has been held void by a court of last resort for claiming more than one invention. In such cases disclaimers have been permitted. *Sessions* v. *Romadka,* 145 U. S. 40, 36 L. ed. 613, 12 Sup. Ct. Rep. 799.

Our conclusions are that appellant is within the spirit and letter of the reissue statute in asking for a reissue for his patent, with the claim in question incorporated therein; and that such claim is for the same invention as the invention of the original patent. It follows that the decision of the Commissioner of Patents was erroneous in rejecting the appealed claim, and that therefore such decision must be and is hereby reversed.

The clerk of the court will certify this opinion and the proceedings of the court to the Commissioner of Patents according to law. *Reversed.*