## LORRAINE et al. v. TOWNSEND et al.

(Circuit Court of Appeals, Ninth Circuit. November 9, 1925.)

No. 4582.

1. Patents ⬡141—Reissue patent, under statute, cannot cover claims not included in original.

Rev. St. § 4916 (Comp. St. § 9461), providing that reissue patent shall be "for same invention" and that "no new matter shall be introduced," is strictly construed to prevent incorporation in reissue patent of claims not included in original.

2. Patents ⬡141—Claims of reissue patent must be such as were intended or sought to be covered by original patent.

Claims of reissue patent must be such as constituted parts or portions of invention intended to be covered by original patent, and not such as were merely suggested or indicated therein.

3. Patents ⬡328—Reissue No. 15,220, claims 17, 18, and 19, for oil, gas, and sand separator, invalid, as not embraced in original patent.

Reissue Lorraine patent, No. 15,220, November 8, 1921, for oil, gas, and sand separator, claims 17, 18, and 19, having to do with maintaining oil at particular point, held invalid, under Rev. St. § 4916 (Comp. St. § 9461), as not embraced in original patent No. 1,373,664, April 5, 1921.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Suit by David G. Lorraine and another against Francis M. Townsend and others, doing business as the Trumble Gas Trap Company. Decree for defendants (2 F.[2d] 729), and plaintiffs appeal. Affirmed.

This is a suit brought by appellants, who will be referred to hereafter as plaintiffs, to enjoin an alleged infringement of their reissued patent No. 15,220, of date November 8, 1921, for an oil, gas, and sand separator. The defendants, appellees here, are the owners of patent No. 1,269,134 for a similar device, issued to the defendant Trumble June 11, 1918. There has been previous litigation between these parties; defendants having sued plaintiffs for infringement soon after plaintiffs began to manufacture the separators described in their patent.

One form of separator manufactured by plaintiffs was enjoined, but plaintiffs were held to be within their rights in manufacturing the separator which they have sold extensively. Lorraine v. Townsend (C. C. A.) 290 F. 54. The purpose of the separators, or

8 F.(2d)—43

traps, as they are called by the witnesses, is to conserve the gas from oil wells, and to separate the oil from the gas and sand which are a part of the flow.

The District Court dismissed the bill.

Westall & Wallace and Joseph F. Westall, all of Los Angeles, Cal., for appellants.

Frederick S. Lyon, Frank L. A. Graham, Leonard S. Lyon and Henry S. Richmond, all of Los Angeles, Cal., for appellees.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

McCAMANT, Circuit Judge (after stating the facts as above). [1] Plaintiffs' original patent was issued April 5, 1921, and was numbered 1,373,664. The plaintiff Lorraine, to whom it was issued, was dissatisfied with its form and applied for a reissue, under the provisions of section 4916 of the Revised Statutes (section 8965 of Barnes' Federal Code, 16 Stat. 205 [Comp. St. § 9461]). The reissued patent contained claims 17, 18, and 19, which defendants are charged with infringing. Defendants contend that these claims do not cover the same invention as the original Lorraine patent. If this contention is well taken, it is decisive of the controversy.

The statute providing for the reissue of patents, above referred to, is as follows:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee, or, in the case of his death or of an assignment of the whole or any undivided part of the original patent, then to his executors, administrators, or assigns, for the unexpired part of the term of the original patent. Such surrender shall take effect upon the issue of the amended patent. The Commissioner may, in his discretion, cause several patents to be issued for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued letters patent. The specifications and claim in every such case shall be subject to revision and restriction in the same manner as original applications are. Every patent so re-

issued, together with the corrected specification, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising, as if the same had been originally filed in such corrected form; but no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the Commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mistake, as aforesaid." R. S. § 4916; Act July 8, 1870, c. 230, § 53, 16 Stat. 205 (Comp. St. § 9461).

The requirement of the statute is that the reissued patent shall be "for the same invention." This requirement is emphasized by the provision that "no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other." The Supreme Court has repeatedly construed this legislation, and has rigidly adhered to the requirement that the reissued patent must be for the same invention as the original patent. Giant Powder Co. v. California Powder Works, 98 U. S. 126, 138, 25 L. Ed. 77; Heald v. Rice, 104 U. S. 737, 738, 26 L. Ed. 910; Eachus v. Broomall, 115 U. S. 429, 438, 6 S. Ct. 229, 29 L. Ed. 419; Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 98, 99, 8 S. Ct. 38, 31 L. Ed. 100; Freeman v. Asmus, 145 U. S. 226, 241, 12 S. Ct. 939, 36 L. Ed. 685; Topliff v. Topliff, 145 U. S. 156, 170, 12 S. Ct. 825, 36 L. Ed. 658. The case last cited holds that the identity of the two inventions must appear from the specification and claims of the original patent. In McCormick Machine Co. v. Aultman, 169 U. S. 606, 610, 18 S. Ct. 443, 444, 42 L. Ed. 875, it is said: "New matter cannot be introduced, nor can the scope of the invention be enlarged."

The original Lorraine patent, No. 1,373,-664, contained five claims. These were as follows:

"1. In an apparatus for separating gas and oil from oil wells comprising a receptacle, a vertical partition arranged in the receptacle and terminating short of the top and bottom of the receptacle, and means arranged between the said partition and a contiguous wall of the receptacle for introducing the oil from the well whereby the oil is caused to flow downwardly and around the lower end of the partition and rise on the opposite side and the gas that freely escapes from the oil rising to the top of the receptacle and collecting above the upper end of the partition; said means including an inlet oil tube arranged in the upper part of the receptacle, said tube having a surrounding discharge sleeve with a deflecting bottom plate for discharging the oil toward the receptacle wall.

"2. In an apparatus for separating gas and oil from oil wells comprising a receptacle, a vertical partition arranged in the receptacle and terminating short of the top and bottom of the receptacle, and means arranged between the said partition and a contiguous wall of the receptacle for introducing the oil from the well whereby the oil is caused to flow downwardly and around the lower end of the partition and rise on the opposite side and the gas that freely escapes from the oil rising to the top of the receptacle and collecting above the upper end of the partition; said means including an inlet oil tube arranged in the upper part of the receptacle, said tube having a surrounding discharge sleeve with a deflecting bottom plate for discharging the oil toward the receptacle wall; said sleeve having upper and lower outlets for gas and oil respectively.

"3. In an apparatus for separating oil and gas, a receptacle having separate discharge means for the oil and gas, each having an exterior valve actuated by a common crank, said valves being set for one to open as the other closes and float means within the receptacle actuated by the height of the liquid, operatively connected to said crank to actuate said valves.

"4. In an apparatus for separating oil and gas, the combination of a receptacle having oil inlet means, separate oil and gas outlet means comprising pipes extending from the interior of said receptacle, stopcocks arranged in said pipes, one to open as the other closes and actuated by a common crank, float means within the receptacle operatively connected to said common crank adapted to actuate the valves with reference to the height of the liquid within the receptacle.

"5. In an apparatus for separating gas and oil the combination of a receptacle, a float within the receptacle for actuating gas and oil outlet valves, said float comprising a sealed chamber, two supporting arms of equal lengths pivoted to said float at their proximal ends and pivoted to the wall of the receptacle at their distal ends to hold the chamber in substantially vertical alinement during movement thereof, the pivotal centers of said arms being offset in vertical alinement at their distal ends, one of said arms having an extension thereon extending

through the wall of the receptacle and being operatively connected to an actuating arm of said valves."

There had been a number of oil and gas separators patented prior to the original Lorraine patent. They all had receiving chambers in which the oil from the well is received, an outlet pipe for the gas, and another for the oil. Most of the devices were equipped with means for drawing off the sand and water which settle to the bottom of the, receiving chamber. Some of these separators had equipment for automatic control of the oil outlet pipe. This control was exercised by a float on the surface of the oil in the separator. Lorraine introduced two new features. One of these was a vertical partition within the cylindrical separator, and the other a mechanism for controlling the gas and oil outlets automatically, so that one opens as the other closes.

The vertical partition is open at the top, so as to permit the collection of gas under pressure, to be delivered to the outlet pipe at the top of the cylinder. This partition extends below the normal level of the oil, but terminates a considerable distance above the bottom of the separator. The oil from the well in the Lorraine trap is introduced into the segment lying between the vertical partition and the outer wall of the separator. It passes under the vertical partition into the main chamber of the separator. The sand and water are given an opportunity to settle to the bottom, where they can readily be drawn off. The oil outlet is on the side of the separator. It is operated by a valve, which is controlled by a float resting on the surface of the oil. This float also controls a valve which is attached to the gas outlet. It permits the discharge of oil as the oil level rises, and the discharge of gas as the level of the oil falls. The synchronized valve attachment and the segmental division of the trap are the Lorraine inventions. The testimony satisfies us that they constitute a distinct improvement over the old separators. They permit the discharge of gas or oil, as the situation may require. They are effective in preventing the flow of oil into the gas outlet and of gas into the oil outlet. The partition protects the float from interference by the in-coming oil, and the separator, as a whole, provides good facilities for the settlement of sand and its convenient removal.

The description of these improvements is found in the specifications accompanying the original patent, and they are protected by the original claims. The claims whose infringement is charged do not embody these improvements. These claims are as follows:

"17. An oil and gas separator for oil wells, including a receptacle having a receiving chamber therein for the reception of oil and its constituents, and a settling chamber communicating with said receiving chamber, a float mounted in the upper portion of said receptacle for regulating the discharge of the oil therefrom, whereby a substantially uniform volume and level of oil may be maintained in said settling chamber at a point above the vertical center of the receptacle.

"18. An oil and gas separator for oil wells including a receptacle having a receiving chamber therein for the reception of oil and its constituents, and a settling chamber communicating with said receiving chamber, said receiving chamber and said settling chamber having a common outlet whereby the gas liberated from the oil in both chambers may be commonly discharged, a float mounted in the upper portion of said receptacle for regulating the discharge of the oil therefrom, whereby a substantially uniform volume and level of oil may be maintained in said settling chamber at a point above the vertical center of said receptacle.

"19. An oil and gas separator for oil wells including a receptacle having a receiving chamber and a settling chamber in communication, a float in the upper portion of said receptacle, pivotally supported on the walls thereof, an oil discharge valve communicating with said settling chamber and externally mounted on said receptacle, and means for operatively connecting said float with said valve."

[2] In Carpenter Straw Sewing Co. v. Searle (C. C.) 52 F. 809, 814, Judge Coxe says: "Unless the court can find that the invention of the reissue is described as the invention in the original, and that the patentee intended to secure it as his invention in the original, the reissue is invalid; it is not for the same invention."

In Corbin Cabinet Co. v. Eagle Lock Co., 150 U. S. 38, 42, 43, 14 S. Ct. 28, 30, 37 L. Ed. 989, the court says: "It is settled by the authorities that, to warrant new and broader claims in a reissue, such claims must not be merely suggested or indicated in the original specification, drawings, or models, but it must further appear from the original patent that they constitute parts or portions of the invention which were intended or sought to be covered or secured by such original patent."

[3] Tested by these rules claims 17, 18, and 19 of the reissue patent are an enlargement of the scope of Lorraine's invention. We may say of each of them, as was said

by the Supreme Court in Freeman v. Asmus, 145 U. S. 226, 239, 12 S. Ct. 939, 942, 36 L. Ed. 685: "There is nothing in the original specification which indicates that any such claim was intended to be made in the original patent."

In Carlton v. Bokee, 17 Wall. 463, 471, 472 (21 L. Ed. 517), the court says: "We think it proper to reiterate our disapprobation of these ingenious attempts to expand a simple invention of a distinct device into an all-embracing claim, calculated by its wide generalizations and ambiguous language to discourage further invention in the same department of industry and to cover antecedent inventions."

This language is applicable to the case at bar. It appears that the original Lorraine application contained 19 claims, many of which were rejected by the Patent Office as covered by the prior patents issued to the defendant Trumble and others. The 5 claims allowed all related to the new features, above described, which constituted Lorraine's invention. On the reissue, these 5 claims are expanded to 19, some of which relate to purposes not previously disclosed, and not involved in the Lorraine invention.

The purpose of the device described in claims 17 and 18 is to maintain the oil at a point above the vertical center of the receptacle. This purpose is not mentioned in the specification accompanying the original Lorraine patent, nor is there any claim in that patent which bears on this subject.

Plaintiffs' case is based on some changes made by the defendants in the Trumble separator, early in the year 1921. It is claimed that these changes assured the maintenance of a high oil level and thereby infringed the reissue patent of plaintiffs.

The charge of infringement being based wholly on these void claims, the District Court did not err in dismissing the bill.

The decree is affirmed.