## EACHUS *v.* BROOMALL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued October 27, 1885.—Decided November 16, 1885.

In a suit in equity to restrain alleged infringements of a patent, where no notice has been given under Rev. Stat. § 4920, and no prior use or knowledge of the invention is specifically set up in the answer as a defence, evidence of the state of the art at the date when the application for it was filed, may be received for the purpose of defining the limits of the grant in the original patent, and the scope of the invention described in its specification.

The invention patented to James Eachus, August 26, 1873, by letters patent No. 142,154, was a machine, and, as construed by the court, is not the invention described in reissued letters patent No. 6315 to him, dated March 2, 1875, as a process. The latter application having purposely enlarged the claim, the reissue falls under the condemnation declared in *Powder Co.* v. *Powder Works,* 98 U. S. 126.

The bill in equity, which was dismissed on the merits by the decree appealed from, was filed by the appellant to restrain the alleged infringement of reissued letters patent No. 6315, dated March 2, 1875, based on the original patent, No, 142,154, dated August 26, 1873, issued to James Eachus, the complainant.

The specification forming part of the original patent, as set out in the record, was as follows:

"Be it known that I, James Eachus, of Coatesville, in the county of Chester, State of Pennsylvania, have invented a new

and useful Machine for Cutting Paper Boards, of which the following is a specification:

"The nature of my invention consists in combining six adjustable circular saws upon two shafts, set at any angle to each other, and a two-way carriage supported by a frame, and provided with guides so as to work easily and carry the material to be cut. The object of the invention is to trim and cut heavy paper used in the manufacture of books and boxes.

"Figure 1 is a front view of my invention; Fig. 2, a side elevation; and Fig. 3, a ground plan.

"In Fig. 3, $E$ is the frame, which should be strongly constructed, and in form of an L. $B$ $B$ and $T$ $T$ are guides on frame $E$. $A$ is a two-way carriage, constructed in such a manner as to play freely upon guides $B$ $B$ and $T$ $T$. $D$ and $F$ are saw-shafts mounted upon adjustable bearings bolted to frame $E$. $C$ $C$ $C$ and $S$ $S$ $S$ are circular saws, secured upon shafts $D$ and $F$ by adjustable collars.

"For the purpose of operating my machine, shafts $D$ and $F$ are provided with pulleys $P$ $P$. Rotation is communicated by belts $H$ $H$, Fig. 2, from a shaft, $G$, on which are pulleys $P'$ $P'$.

"Upon carriage $A$, Fig. 3, is placed the wet paper to be cut. The pile is composed of a number of large sheets, as they are taken from the paper-machine. The carriage is then drawn upon the guides $B$ $B$, saws $S$ $S$ $S$ cutting through the paper; thence at right angles to the first direction upon guides $T$ $T$, saws $C$ $C$ $C$ cutting through the pile in the new direction, the result of the operation being to trim the edges and cut each sheet in four.

"The saws can be adjusted upon shafts $D$ and $F$, so as to trim and cut the sheets to any desired size.

"I make no claim to the arrangement of circular saws and carriages working upon guides for the purpose of cutting logs, blocks of wood, wood of any kind, or any other material except paper; but

"I claim—

"The combination of shaft $D$, shaft $F$, saws $S$ $S$ $S$ and $C$ $C$ $C$, carriage $A$, and frame $E$, for the purpose of cutting binders' and box-makers' paper, substantially as shown and described."

The drawings referred to are as follows:

The drawings accompanying the specification, which formed part of the reissued patent, were the same as the original, except one described as Figure 4, which was added, but was un-

important. The specification of the reissued patent was as follows:

" Be it known that I, James Eachus, of Coatesville, in the county of Chester, and State of Pennsylvania, have invented a new and improved Process of Cutting Paper Boards, of which the following is a description, reference being had to the accompanying drawings, in which—

. "Figure 1 is a front view of my machine for conducting my process. Fig. 2 is a side elevation of such machine. Fig. 3 is a top view, and Fig. 4 is a detail of a saw in the act of cutting.

" Similar letters of reference indicate corresponding parts in the several figures.

" The object of this invention is to trim and cut heavy paper used in the manufacture of boxes and books; and it consists in subjecting the paper while in a wet state, as it is taken from the paper-making machine, to the action of circular cutters having serrated edges, whereby the sheets are cut evenly and economically, and the trimmings can be returned to the paper machine without regrinding or other treatment.

" In the annexed drawings I have represented one practical form of a machine for conducting my process; but I desire to be understood as not confining myself to the precise construction of such machine, nor to the number of serrated cutters shown.

" In Fig. 3, $E$ designates the frame, which should be strongly constructed. $B\,B$ and $T\,T$ are guides on frame $E$. $A$ is a two-way carriage, which is constructed in such manner as to play freely on the guides $B\,B$ and $T\,T$. $D$ and $F$ are saw-shafts, which are mounted upon adjustable bearings bolted to frame $E$. $C\,C\,C$ and $S\,S\,S$ are circular saws or cutters, having serrated edges, adapted for the purpose intended, which saws are secured upon shafts $D$ and $F$ by adjustable collars.

" For the purpose of operating this machine, shafts $D$ and $F$ are provided with pulleys $P\,P$. Motion is communicated by belts $H\,H$, Fig. 2, from a shaft $G$, on which are pulleys $P'P'$.

" The paper to be cut is put upon the carriage $A$. The pile is composed of a number of large sheets as they are taken from the paper-making machine in a very wet condition. The

car.'age is then drawn upon the guides *B B*, saws *S S S* cutting through the paper; thence at right angles to the first direction upon guides *T T*, saws *C C C* cutting through the pile in the new direction, the result of the operation being to trim the edges of the sheets and cut each sheet into four parts.

"The saws can be adjusted on shafts *D* and *F*, so as to trim and cut the sheets any desired size.

"It will be seen from the above description that I take sheets of paper, while they are in a wet condition, directly from the paper-making machine, and pass the saws over them, thereby trimming their edges, and leaving them of an equal thickness throughout, and dividing them into smaller sheets. This process of sawing cannot be performed successfully and without tearing the surface of the sheets unless the sheets are wet, and in the condition in which they leave the paper-making machine.

"I make no claim to the arrangement of circular saws and carriages for the purpose of sawing logs or any kind of wood; nor do I broadly claim the machine herein described for sawing wood.

"I am aware that paper board has heretofore been sawed when in a dry state, and I therefore lay no claim to such invention, which leaves the edges of the paper thus sawed in a jagged condition, the action of the saw-teeth tending to separate the fibres of the paper board in the line of the kerf; whereas, when the paper board is sawed in a wet state, directly after leaving the paper machine, the edges are left smooth, the saws causing an interlocking of the fibres in its path through the paper, and the trimmings of the paper being in a condition to be returned to the vat without regrinding, which would not be the case with trimmings of paper board sawed in a dry state.

"What I claim as new, and desire to secure by letters patent, is—

"The process of sawing paper board as herein described, consisting in sawing the paper board while it is in the wet state in which it is taken from the paper-making machine, substantially as described, and for the purpose set forth."

The only defences set up in the answer were a denial of the

validity of the reissued patent, and a denial of the alleged in-
fringement.

*Mr. Wayne McVeagh* and *Mr. Joseph C. Fraley* [*Mr.
George Tucker Bispham* was with them on the brief] for ap-
pellant, contended that the reissue and the original letters
patent were for the same invention; and further that the de-
fence of want of novelty could not be considered under the
pleadings in this case, as no notice of prior knowledge or use
was given in the answer, and as all evidence touching this point
was seasonably objected to. Rev. Stat. § 4920.

*Mr. Charles H. Pennypacker* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.
He stated the facts in the language above reported, and con-
tinued:

A comparison of the two patents, for the purpose of deter-
mining the question raised as to the identity of the inventions
described in them, requires an interpretation of the original
patent in the light of the state of the art at the date when the
application for it was filed. And we have the material for
ascertaining its meaning, in that view, by means of the evi-
dence on that point contained in the record, which, although
objected to on the ground that no prior use or knowledge of
the invention claimed had been specifically set up in the answer
as a defence, was nevertheless admissible for the purpose of de-
fining the limits of the grant in the original patent and the
scope of the invention described in its specification. *Vance* v.
*Campbell*, 1 Black, 427; *Brown* v. *Piper*, 91 U. S. 37.

From that evidence, it appears that, at the time of the al-
leged invention of the appellant, and for many years prior
thereto, paper boards for bookbinding or for making boxes
were cut, trimmed or separated, while in a wet or moist state,
as the paper in sheets came from the mill, by means of a
hand saw, sometimes with teeth, and sometimes ground with a
curved line to a sharp edge. This was the mode or process in
universal use. Heavy paper coming from the machine in a

dry condition was cut, for similar purposes, in one direction by means of rolling shears; that is, revolving circular discs, operated on a shaft, their edges ground to an angle of about sixty degrees, the same as a pair of scissors; and in the other direction by straight shears, acting like ordinary scissors.

It is manifest, from this state of the art, that it was not open to the appellant, at the time he applied for his patent, to claim as his invention the discovery that heavy paper, intended for the use of bookbinders and box-makers, could best be cut into proper shapes and sizes, while in wet sheets, as they came from the machine, nor that the cutting could best be performed by cutters with serrated edges. For this was matter of general knowledge and common practice.

Accordingly, in the specification to his original patent, he declared the nature of his invention to consist " in combining six adjustable circular saws upon two shafts, set at any angle to each other, and a two-way carriage supported by a frame, and provided with guides so as to work easily and carry the material to be cut." Then follows a description of the machine which contains this combination, and of the mode of operating it, so as to effect the result, of cutting the large wet sheets of heavy paper, placed on the frames for that purpose, in both directions, into smaller sheets of any desired sizes. This description refers to the drawings, which show the machine with all its parts, and their relations to each other, in their combination.

But none of these parts, either in their construction or mode of operation, or general function, are novel; for saws and shafts, and frames for carrying material to be cut, had been in common use for cutting other material, and were well known. Accordingly, the appellant, in his specification, enters an express disclaimer as to all such uses, and the combinations and arrangements of well-known machinery by which they had been effected. He says: "I make no claim to the arrangement of circular saws and carriages, working upon guides for the purpose of cutting logs, blocks of wood, wood of any kind, or any other material except paper." And thereupon states his claim, precisely, as follows : " The combination of shaft $D$,

shaft *F*, saws *S S S* and *C C C*, carriage *A*, and frame *E*, for the purpose of cutting binders' and box-makers' paper, substantially as shown and described."

It is plain, then, that the only invention exhibited in the drawings, or described in the specifications of the original patent, consists in the particular organization of the machine described, whereby the various parts are combined and adjusted, so as to fit it to accomplish the specific result of cutting heavy paper when in large sheets and in a wet condition, as received from the paper-making machine, into smaller sizes and other shapes, for use as boards in book-binding and box-making.

Whether the particular construction and arrangement of the parts forming the combination and adjustment described was, of itself, something novel, requiring invention, or whether the adaptation and application of such a combination to the particular use declared was an invention by reason of the novelty of the use and the new result obtained, within the principle of the cases of *Stimpson* v. *Woodman*, 10 Wall. 117; *Tucker* v. *Spalding*, 13 Wall. 453; *Brown* v. *Piper*, 91 U. S. 37; *Roberts* v. *Ryer*, 91 U. S. 150, 157; *Heald* v. *Rice*, 104 U. S. 737, 754; *Hall* v. *Macneale*, 107 U. S. 90; *Atlantic Works* v. *Brady*, 107 U. S. 192, and *Pennsylvania Railroad* v. *Locomotive Truck Co.*, 110 U. S. 490, are questions not before us. It is sufficient to say that, whether for such an alleged invention the original patent could or could not be upheld, it cannot be construed as good for anything more or other than that.

We turn now, for the purpose of comparison, to the reissued patent. In the specification thereto the patentee declares that he has invented, not a machine, but "a new and improved process of cutting paper boards," of which a description follows; that the drawings referred to are views of "my machine for conducting my process;" that the invention consists "in subjecting paper, while in a wet state, as it is taken from the paper-making machine, to the action of circular cutters having serrated edges, whereby the sheets are cut evenly and economically, and the trimmings can be returned to the paper machine without regrinding or other treatment;" that, in the annexed drawings, "I have represented one practical form of a machine

for conducting my process, but I desire to be understood as not confining myself to the precise construction of such machine, nor to the number of serrated cutters shown." After describing the construction and operation of the machine, by reference to the drawings, the specification proceeds: "It will be seen from the above description that I take sheets of paper, while they are in a wet condition, directly from the paper-making machine and pass the saws over them, thereby trimming their edges and leaving them of an equal thickness throughout and dividing them into smaller sheets. This process of sawing cannot be performed successfully and without tearing the surface of the sheets, unless the sheets are wet and in the condition in which they leave the paper-making machine."

Then follow these disclaimers:

"I make no claim to the arrangement of circular saws and carriages for the purpose of sawing logs or any kind of wood, nor do I broadly claim the machine herein described for sawing wood. I am aware that paper board has heretofore been sawed when in a dry state, and I therefore lay no claim to such invention, which leaves the edges of the paper thus sawed in a jagged condition, the action of the saw-teeth tending to separate the fibres of the paper board in the line of the kerf; whereas, when the paper board is sawed in a wet state, directly after leaving the paper machine, the edges are left smooth, the saws causing an interlocking of the fibres in its path through the paper, and the trimmings of the paper being in a condition to be returned to the vat without regrinding, which would not be the case with trimmings of paper board sawed in a dry state."

The specification then concludes with the claim, as follows:

"What I claim as new and desire to secure by letters patent, is—

"The process of sawing paper board as herein described, consisting in sawing the paper board while it is in the wet state in which it is taken from the paper-making machine, substantially as described, and for the purposes set forth."

A comparison of the two patents makes it very clear, that, if the patentee had in fact conceived the idea of enlarging the

scope of his invention by development from a machine into a process, he has taken no pains to conceal or disguise his purpose. For he entitled his original patent as for a new and useful machine for cutting paper boards, while with equal explicitness, in his reissue, he declared that he had invented a new and improved process of cutting paper boards. This is at least a *prima facie* departure from the original grant, which would seem to be serious, if not fatal, under a law that limits the power of the Commissioner of Patents so as to issue a new patent only for the same invention; when the original has been surrendered, as inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident or mistake, and without any fraudulent or deceptive intention. If there had been any doubt, as to how the matter was understood by the patentee himself, it has been removed by his testimony in the case, in which, in answer to the question, " For what purpose did you ask a reissue of your patent?" he said, " I was told that a process would cover more than a mere machine, and so I applied for a process."

Taken in this obvious sense, the reissued patent falls directly under the condemnation of the law as declared in *Powder Co.* v. *Powder Works*, 98 U. S. 126, and other similar cases not necessary to be cited.

The attempt is made, in argument on behalf of the appellant, by construction to convert the original patent into a patent for a process, in which the real invention described " consisted in operating upon a peculiar kind of material with a peculiar kind of cutter," and in which the claim was inadvertently framed, so as to cover merely the machine itself, and not the process in which it was one only of the factors. But we have already shown, by reference to the state of the art, according to which heavy paper in a wet condition was cut by means of a saw, that the original patent could not be construed as including such a process without invalidating it; and, from the terms of the specification itself, that no such process is described as the invention intended to be claimed. The patent

is plainly limited by its language to the combination, arrangement and adjustment of the particular parts of the very machine described, for the uses to which it is declared to be applicable. On the other hand, the claim of the reissued patent is broad enough to cover the process of sawing paper boards in a wet state by means of a hand-saw; and if, for the purpose of saving it from the necessary consequences of such a claim, it is restrained by construction so as to include only the process described when performed by means of circular cutters having serrated edges—terms of limitation to be found in the specification—it is still broad enough to cover every arrangement, combination and adjustment in which these elements may be found; and this surely is not the same invention as that described in the original patent.

The decree of the Circuit Court dismissing the bill is

*Affirmed.*