STATE OF KANSAS v. MERIWETHER et al.

(Circuit Court of Appeals, Eighth Circuit. June 2, 1909.)

No. 2,980.

APPEAL AND ERROR (§§ 634, 654*)—UNITED STATES CIRCUIT COURT OF APPEALS—PROCEDURE—SUPPLYING OMISSIONS IN RECORD.

Under Rev. St. § 698 (U. S. Comp. St. 1901, p. 568), and rule 14 of the Circuit Court of Appeals (150 Fed. xxviii; 79 C. C. A. xxviii), it devolves on an appellant to see to it that a record is brought up to such court showing such of the proceedings of the trial court as are necessary for the proper presentation of the errors assigned, and for want of such a record the court has power to dismiss the appeal. This power, however, ought not generally to be exercised unless the omission arose from negligence or indifference, and instead, where good faith is shown, the appellee will be directed to designate such additional papers, documents, and proof used on the hearing below as he deems necessary for a proper presentation of the case, and the appellant will be ordered to file the same as a part of the record under penalty of a dismissal of the appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2775, 2819–2822; Dec. Dig. §§ 634, 654.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

F. S. Jackson and L. W. Keplinger (A. L. Berger, on the brief), for appellant.

R. E. Ball, for appellees.

Before ADAMS, Circuit Judge, and CARLAND, District Judge.

ADAMS, Circuit Judge. This cause presents the question whether Hunter M. Meriwether or the state of Kansas is entitled to certain money resulting from the condemnation for public use of a certain tract of land in Wyandotte county, Kan., by a railroad company. Whether the one or the other is entitled to it depends upon which of them was the owner of the land at the time of the condemnation. This land is situated near the fork of the Missouri and Kansas rivers, and is conceded to have been a part of a tract originally in 1857 patented to one Armstrong, from whom by mesne conveyances Meriwether deraigns title.

After issue was joined, this cause, which was in the nature of a bill of interpleader, was referred to a special master to take the evidence and report the facts and conclusions of law for the consideration of the court. In due time the master made his report, disclosing that many witnesses had testified in the case and that records of weather bureau, reports of river commissions, plats, patents, maps, deeds, and other documentary evidence had been given in evidence and considered by

him, all of which he stated he returned to the court as a part of his report. He then made certain findings of fact, and stated as a conclusion of law that the defendant Meriwether was entitled to receive the money resulting from the condemnation and appropriation of the land by the railway company. His report, with exceptions thereto, which were filed before the master and overruled by him in due time, came before the court for hearing, when the report was approved and confirmed, and the fund in question ordered paid to Meriwether. From this decree the state of Kansas alone appeals. In its præcipe for a transcript it directed the clerk of the trial court to send up the pleadings, certain orders of the court, report of the special master, exceptions of the state of Kansas, and the decree. Obeying that direction, the clerk sent nothing more than what was called for; nor even that, for we fail to find the exceptions. Neither the testimony of the witnesses nor the numerous plats, reports, maps, or other documents introduced in evidence were certified here. Practically all we have is the pleadings, findings, and conclusions of the special master and the decree of the court below confirming the same.

The master's findings of fact show that in 1857, when the land was patented to Armstrong, the southern bank of the Missouri river formed the northern boundary of the patented tract, and that the land now in controversy came to within a distance of from 300 to 600 feet from the river bank as it then was; that afterwards the Missouri river encroached upon the southern bank, overran and carried away the surface of the patented land so far southwardly as to involve the land in dispute; that steps were taken to avert its progress by riprapping the bank, which proved fairly efficacious, but that the channel of the river had before then been so diverted southwardly that it came close up to the riprap bank; that the channel continued to flow there, covering the lower strata of the land in controversy from about 1869 to 1887, when it began to recede and a sand-bar accretion began to appear; that the channel, which for years had been navigable along and close to the riprap bank, ceased to be there navigable, and soon thereafter the commercial and navigable channel had receded towards its original location northwardly several hundred feet away from the land in controversy; that as this channel receded the sand bar increased, and firm land again appeared where before there had been water covering the channel and bed of the river.

It is claimed that the special master found that the land in controversy was formed by accretion in the full legal significance of that word, and that therefore the findings support the decree, but a careful scrutiny of the findings fails to convince us that any such distinct finding was made. It is true the master says:

"The defendant and cross-petitioner Hunter M. Meriwether is the fee owner by a direct line of conveyances from Silas Armstrong, patentee from the United States, for the land bordering on the south bank of the Missouri river between the land of Jane W. Stark mentioned in the preceding finding and the state line, *with all accretions thereto*."

The italicized words do not in our opinion amount to a finding that the lands in controversy were formed by accretion. The finding at best states a conclusion resulting from prior findings, and fails to show that

the word "accretions" there employed is referable to the land in dispute.

There is also a finding that an island had formed in the river on the Missouri side of the state line which became submerged at high water, and that the land in controversy now lies on the southern and descending slope of the sand formation on the west and southern side of that island. It appears to us that all the questions which are thus only vaguely referred to in the findings relating to title by accretion, whether on the island or mainland, are inextricably interwoven with the greater question whether the land was originally carried away by avulsion or by erosion; and as to this there is no finding whatsoever.

The land, as already said, originally belonged to Meriwether's grantor, and if the state ever acquired title it was because the land had for 20 years or more constituted the bed of the river, which, being navigable, under well-recognized law belonged to the state. If the river by reason of a flood or other sudden inundation violently cut a new channel through and thereby submerged the land so as to make it for a time only the bed of the river, that fact did not operate to divest Meriwether's title and invest the same in the state. If, on the other hand, the river encroached upon the land by the gradual and imperceptible process of erosion only, the title of the state followed wherever the bed of the river went. For a statement of this doctrine and a résumé of cases concerning it, reference may be made to the kindred case of Fowler v. Wood, 73 Kan. 511, 85 Pac. 763, 6 L. R. A. (N. S.) 162, 117 Am. St. Rep. 534. Whether, therefore, the occupation of the land by the river was brought about one way or the other became a vital, if not decisive, issue of fact in this case. The findings of fact are silent on this important issue, and on other questions they are not specific enough to enable us to properly hear and dispose of the case.

A motion by the appellee Meriwether to dismiss the appeal because the transcript of the record is defective in these particulars first requires consideration.

The statute (section 698, Rev. St. [U. S. Comp. St. 1901, p. 568]), provides that:

"Upon the appeal of any cause in equity, * * * a transcript of the record. as directed by law to be made, and copies of the proofs, and of such entries and papers on file as may be necessary on hearing of the appeal, shall be transferred to the Supreme Court."

This statute by provisions of the act establishing Circuit Courts of Appeal (Act March 3, 1891, c. 517, 26 Stat. 826 [U. S. Comp. St. 1901, p. 488]), is made applicable to appeals taken to this court.

Rule 14 of this court (150 Fed. xxviii; 79 C. C. A. xxviii), in recognition of the statutory obligation just referred to, provides:

"No case will be heard until a complete record, containing in itself, and not by reference, all the papers, exhibits, depositions and other proceedings, which are necessary to the hearing in this court, shall be filed."

This statute and rule afford ample latitude for the parties to eliminate such part of the proceedings as may not be necessary for the proper presentation of the cause in the appellate court; but as the filing of a transcript of such parts of the record "as may be necessary on hearing of the appeal" is a jurisdictional necessity (Hill v. Railroad

Company, 129 U. S. 170, 9 Sup. Ct. 269, 32 L. Ed. 651; Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp., 61 Fed. 237, 9 C. C. A. 468), it devolves upon the party taking the appeal to see to it that a record is brought here showing such of the proceedings in the trial court as is necessary for a proper presentation of the errors assigned (Railway Company v. Stewart, 95 U. S. 279, 284, 24 L. Ed. 431; Teller v. United States, 49 C. C. A. 263, 111 Fed. 119). For want of such a record the appellate court has the power to dismiss the appeal for want of prosecution. Keene v. Whittaker, 13 Pet. 459, 10 L. Ed. 246; Redfield v. Parks, 130 U. S. 623, 9 Sup. Ct. 642, 32 L. Ed. 1053; Meyer v. Implement Co., 29 C. C. A. 465, 85 Fed. 874. This power, however, ought not generally to be exercised unless the situation discloses that the interests of justice would thereby be promoted, or that the indifference or negligence of the appellant warrants it as a disciplinary measure. The common remedy to cure a defective transcript on a suggestion of a diminution of the record is a writ of certiorari addressed to the trial court commanding it to send up a full transcript of its proceedings, but as this might involve certifying of much evidence unnecessary for the hearing in the appellate court, and might also be attended with delay, a practice more simple and consonant with justice has been approved.

In Railroad Company v. Schutte, 100 U. S. 644, 25 L. Ed. 605, there was a motion to dismiss the appeal because of a defective record. The court there said:

"It is now alleged that many important papers and documents used on the hearing below, and necessary for the proper determination of the cause here, have been omitted from the transcript as filed. While we desire to encourage in every proper way all attempts made in good faith to exclude immaterial matter from the transcripts brought here on appeals or writs of error, it will not do to permit the appellant or the plaintiff in error to make up a record to suit himself, without any regard to the wishes of his opponents or the rules and practice of the court. We therefore order that the appellees file with the clerk of this court and with the counsel for the appellant, on or before the 1st day of February next, a statement of the papers, documents, and proofs used on the hearing below, and omitted in the transcript now on file, which they deem necessary for the proper presentation of the cause; and that unless the appellant shall, on or before the 15th day of March, file in this court as part of the record copies of such papers, duly certified by the clerk of the Circuit Court or his deputy, under the seal of the court, this appeal be dismissed. If in this way unnecessary papers are brought up, we will, on application, make such order in respect to costs as may under the circumstances be proper."

The same practice, denominated by Judge Lurton as a less rigorous rule, is followed by the Circuit Court of Appeals for the Sixth Circuit in Cunningham v. German Ins. Bank, 43 C. C. A. 377, 103 Fed. 932.

We find in the appellees' brief the following:

"Meriwether not only claimed by the most specific assertions that the property in question was an accretion to the land which he owned on the shore, but that it was a part of the same land. He was entitled to, and did show, by the most indisputable evidence that he owned the land by a record title; that it was washed away by a rapid process of avulsion, and that it was reformed by natural accretions to the original shore. All of these propositions were not only set forth in most indisputable claims, but were established beyond all question by the evidence introduced."

If this assertion is correct, the production of the evidence will fully supply the defects in the findings to which we have called attention. If it is not correct, it will doubtless be sufficient to enable us to proceed to a final hearing of the cause and to reach a conclusion one way or the other.

Rather than to sustain appellees' motion to dismiss this appeal, we have concluded to adopt the more conservative practice approved in Railroad Company v. Schutte. An order will accordingly be made that the appellees on or before the 1st day of July, 1909, file in this court a written specification of the papers, documents, and proof used on the hearing below and omitted from the transcript now on file which they deem necessary for the proper presentation of the cause to this court, and deliver a copy thereof to counsel for the appellant; and that unless the appellant shall on or before the 1st day of September, 1909, file in this court as part of the record, copies of such papers, documents or proof duly certified by the clerk of that court or his deputy under the seal of that court, this appeal will be dismissed.