## SCHEVENELL v. BLACKWOOD, State Highway Commissioner, et al.

Circuit Court of Appeals, Eighth Circuit.
September 27, 1929.

No. 8441.

W. C. Rodgers, of Nashville, Ark., for appellant.

Hal L. Norwood, Atty. Gen., of Arkansas, and Walter G. Riddick and Charles T. Coleman, both of Little Rock, Ark., for appellees.

Before BOOTH, Circuit Judge, and SANBORN and DEWEY, District Judges.

SANBORN, District Judge. The appellant—plaintiff in the court below—a resident of Tennessee, brought this suit against the appellees as defendants, the officers of the state of Arkansas constituting the highway commission of that state, attacking the constitutionality of certain of the laws of Arkansas relating to the construction and maintenance of state highways, under which the defendants have acted. Arkansas has adopted the method now used by many, if not most, of the states of the Union, of establishing, constructing, and maintaining a system of state highways out of revenues derived from the owners and operators of motor vehicles using such highways, a portion of which revenues are assessed upon the basis of gasoline purchased and consumed in the operation of such vehicles. In anticipation of the

collection of the revenues, the law authorizes the issuance of bonds or notes in aid of the construction of the highways.

The bill of complaint contains, in addition to allegations of fact, various conclusions of mixed law and fact, conclusions of law, and argumentative matter, and asks for various forms of equitable relief, injunctive and otherwise. The defendants moved to dismiss the original bill for want of equity; the motion was granted with leave to amend; amendments were made; a motion was again interposed by the defendants to dismiss the amended bill for the same cause, and that motion was granted. The plaintiff appealed, and assigned as error the granting of both motions. Having amended the original bill after its dismissal, it is not apparent how the sustaining of the motion to dismiss that bill can be assigned as error, but, as substantially the same questions are presented by the appeal from the order dismissing the amended bill, the question is unimportant.

▌ The court below construed the complaint as constituting an attack upon the constitutionality of the laws referred to. The plaintiff now contends that certain of the allegations of the complaint present issues of fact which could not be determined upon a motion to dismiss. In order to determine in what respect it is claimed that the court below fell into error, it is necessary to have recourse to the plaintiff's brief. All questions presented by the assignment of errors which are not argued in the brief are waived. Denver Live Stock Commission Co. v. Lee, (C. C. A.) 18 F.(2d) 11.

▌ Quoting from the plaintiff's brief:

"In paragraph VII of the original bill, it is charged that appellees are misappropriating and squandering the taxes being imposed on and collected from the appellant 'in that they are paying large and excessive amounts for the roads and bridges being built, maintained and constructed' by them, etc.

"This is strictly a matter of fact. If true, it is a taking of appellant's property without due process of law."

This same contention was evidently made before the trial court, who answered it in his memorandum as follows:

"The complaint charges in general terms misapplication of funds by the defendant. The allegation upon that point is not specific. There is no instance alleged in which there has been a misapplication of funds. The allegation seems to be based upon the theory that the funds are being misapplied by the Highway Commission of Arkansas simply because it is obeying the statutes which are charged to be unconstitutional."

We concur in this statement. If the laws pursuant to which the payments were made are unconstitutional, the payments were unauthorized. If the payments were authorized by law, the statement by the plaintiff that the payments were large and excessive is not equivalent to charging that they were made in violation of law, and at best constitutes nothing more than a mere statement of opinion.

The plaintiff cites the case of Crampton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070, in which the court said (page 609):

"Of the right of resident tax-payers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property-holders of the county may otherwise be compelled to pay, there is at this day no serious question."

There is no dispute as to the correctness of that statement. The only illegal disposition of money by the defendants which could be inferred from the plaintiff's complaint is that it was made under laws alleged to be unconstitutional.

▌ Quoting further from the plaintiff's brief:

"In paragraph IX of the original bill it is averred that the thirteen million dollars worth of bonds or certificates of indebtedness then outstanding, and for which he is being taxed to pay, 'were actually executed and signed beyond the boundaries of the State of Arkansas by the officials of Arkansas designated for this purpose,' that is, the governor, state treasurer and state highway commissioner (1927 Arkansas Act No. 11, Section 5), and said bonds or notes are, and should be declared, void, and appellant, as a taxpayer, relieved of this tax or their payment.

"Of course, it is necessarily a question of fact as to whether or not they were executed out of the state."

Whether this question was argued before the trial court does not appear. It is not referred to in his memorandum. The plaintiff cites, in support of his theory that the signing of the notes outside of the state would invalidate them, two cases: Chisholm v. Georgia, 2 Dall. 419, 446, 1 L. Ed. 440, holding that a governor of a state is a mere executive officer, that his general authority is limited by the constitution of the state, and that he is without power to spend the public money except as authorized by the Constitution or by law; and the case of Ex parte

Crump, 10 Okl. Cr. 133, 135 P. 436, 47 L. R. A. (N. S.) 1036, in which it was held that the functions of the chief magistrate are for the benefit of the state, and are local to it, and that the constitutional functions of his office cannot be exercised outside of the state; the effect of his absence from the state being to suspend his constitutional functions.

These authorities clearly do not justify the position of the plaintiff here. The act in question authorized the issuance of these notes, and authorized the officers constituting the highway commission to execute and sell them. The Governor, in signing the notes, was exercising no constitutional function, but was acting merely as a member of the commission. The actual execution of the notes was a mere ministerial act, and there could be nothing less vital to their validity than the place in which that act was performed. There is no claim that there was any other irregularity connected with their issuance or that the money was not duly received for them. To hold that a state might borrow thirteen millions of dollars and issue notes therefor, which notes might thereafter be repudiated because they were signed by state officers outside of the state, would be absurd.

It now appears that, after the order dismissing the amended bill was made, the General Assembly of the state of Arkansas, at a special session of 1928, by Act No. 6, approved October 3, 1928 (Acts of Ark. 1928, Special Session, p. 27), specifically recognized all state highway notes outstanding as valid obligations of the state of Arkansas. By virtue of this law, of which we take judicial notice, the question would appear to be moot, in any event. As stated by Judge Hook in the case of Ridge v. Manker (C. C. A.) 132 F. 599, 601:

"An appellate court may avail itself of authentic evidence outside of the record before it of matters occurring since the decree of the trial court when such course is necessary to prevent a miscarriage of justice, to avoid a useless circuity of proceeding, to preserve a jurisdiction lawfully acquired, or to protect itself from imposition or further prosecution of litigation where the controversy between the parties has been settled, or for other reasons has ceased to exist."

The plaintiff in his brief next says:

"Section X of the original complaint alleges that appellees have forceably, and without any right or authority, taken possession of what is commonly known as the Harahan Viaduct, a wooden bridge or structure extending from the west end of the Harahan Bridge across the Mississippi River, at Memphis, Tennessee, to the St. Francis Levee, a distance of about 2.1 miles and are exacting of the appellant, and all others, 'passing over said bridge a toll, ranging from five cents to one dollar depending on the vehicle, the article or number of persons passing, in violation' of his rights under both the state and national constitutional provisions, that is, that his money, tolls or property is being taken or required without due process of law, 'simply by their (appellees) ability to command the force and power of the State of Arkansas for this illegal purpose,' and this in spite of the fact 'that said bridge or viaduct was fully and completely paid for years ago * * * it being a part of the public roads and bridges of Crittenden County, Arkansas.'

"Under the pleadings this must necessarily be taken as true also."

Act No. 104, 1927 Arkansas Acts, page 282, entitled "An Act to authorize the construction of toll bridges by the State Highway Commission, such bridges to become free bridges when sufficient tolls are collected to pay the cost of construction," provides:

"Section 1. The State Highway Commission is hereby authorized to construct and operate toll bridges on the state highway system, and to fix the rates and collect the tolls thereon. When the cost of construction has been realized from the tolls, and the bonds issued on any bridge, with interest, are paid in full, and all sums advanced or loaned by the State Highway Commission are repaid, no further tolls shall be collected, and the use of the bridge thereafter shall be free."

The act then provides generally for the construction and operation of toll bridges, the financing of the construction, and for their maintenance and repair. The state highway commission is authorized to acquire and construct the necessary approaches, to fix rates of toll, raise or lower the rates, and to charge sufficient revenues to pay such bonds as may have been issued to construct the bridge and approaches and keep the bridge and its approaches in repair. The act provides that the revenues derived from the toll bridge shall be used, first, to pay the salaries of toll collectors and the incidental expense of collection; second, to pay the interest and principal of bonds as they become due; and, third, to pay the necessary expense of repairing and maintaining the bridge. The act does not specifically authorize the state highway commission to take over a toll bridge already constructed by one of

the counties, but the general authority given to the commission is to construct and operate bridges on the state highway system, and we think the act is susceptible of a construction which would permit the state to take over a toll bridge already constructed, even though paid for by a county, and to charge tolls thereon sufficient to keep it in suitable condition and repair and to pay the cost of acquisition. In the absence of any holding of the Supreme Court of the state of Arkansas to the contrary, we have no disposition to hold that the act cannot be so construed. However, this question also appears to have been set at rest, since the decision in the court below, by an act of the special session of the General Assembly in 1928 (Act No. 5, approved October 3, 1928, Acts of Ark. 1928, Special Session, page 20, § 20), which provides:

"The title to the Harahan Viaduct, in Crittenden County, and to the right-of-way on which it is located, is hereby vested in the State of Arkansas.

"The action of the Highway Commission, making the Harahan Viaduct a part of the state road on which it is located, and operating the viaduct as a state toll bridge, is hereby ratified and confirmed.

"The Highway Commission is authorized and directed to continue to operate the viaduct as a state toll bridge, and to fix the rate of tolls for its use, until the new viaduct now in the course of construction is completed, surfaced and ready for use, at which time the collection of tolls shall cease and the use of the new viaduct shall be free."

The trial court called attention to the fact that the constitutionality of Act No. 104, p. 282, Acts of Arkansas 1927, had been sustained in the case of Connor v. Blackwood, 176 Ark. 139, 2 S.W.(2d) 44.

The next contention of the plaintiff, as stated in his brief, is:

Act No. 240, 1927, Section No. 1, levies a property tax, which complainant has to pay of 5¢ per gallon on each gallon of gasoline purchased by him, * * * in violation of Section No. 5, Article No. 16 of the Constitution of said state, which provides:

"'All property subject to taxation shall be taxed according to its value (4), that value to be ascertained in such manner as the general assembly shall direct, making the same equal and uniform throughout the state (5) No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value.'

"Because said tax is not based on the value of the gallon of gasoline, and it is a greater tax, according to value, than is imposed upon any other species of property.

"The learned district judge, while referring particularly, in his opinion, to this averment of the complaint, as before stated, seemingly, took it for granted that this act (No. 240) passed in 1927, was the same, except the amount of the tax had been increased therein, as the one adopted in 1921 (No: 606), which had been held constitutional by both the state and the United States Supreme Courts in the cases of Standard Oil Co. v. Brodie, 153 Ark. 114, 239 S. W. 753, and Pierce Oil Corporation v. Hopkins, 264 U. S. 137, 44 S. Ct. 251, 68 L. Ed. 593, the latter being based on the former.

"In this apparent assumption lies the error. There is a vast difference between the two acts. A comparison makes this conclusive. The 1921 law (No. 606) is patently a tax on the privilege of the use of the highway, while that of 1927 (No. 240) is manifestly a direct tax on the property (the gasoline) itself. In other words, the first (606, 1921) was levied on and collected from the 'user' of the highway or the 'purchaser' of the gasoline. The second (240, 1927) · is levied on 'each gallon of gasoline,' to be paid by and collected from, the 'manufacturer' or 'wholesaler.' Sections 2 and 3, Act No. 240."

The court, in his memorandum with reference to this question, said:

"By an Act of the General Assembly of Arkansas passed in 1921, page 685 of the Acts of 1921, a tax of one cent was imposed upon each gallon of gasoline sold in the State. This tax was sustained by the Supreme Court of Arkansas in the case of Standard Oil Co. v. Brodie, 153 Ark. 114, 239 S. W. 753. That Court held that the tax was not a violation of the Constitution of the State of Arkansas. The same tax was sustained by the Supreme Court of the United States in the case of Pierce Oil Corporation v. Hopkins, 264 U. S. 134, 44 S. Ct. 251, 68 L. Ed. 593. In that case the tax was sustained as not being in violation of the due process clause of the 14th Amendment to the Constitution of the United States. The Supreme Court held that the tax was not violative of that provision of the Constitution.

"That tax was increased to four cents a gallon by Section 35 of the Harralson Act (Acts Ark. Extra Sess. 1923, No. 5, p. 53).

"That Section was amended by Section 1 of Act 240 of the Acts of the General Assembly of Arkansas of 1927, pages 819, 821, the tax was increased to five cents per gallon.

"The mere increase in the amount of the

tax does not make it violative of the due process clause of the 14th Amendment, nor does the increase make it violative of the Constitution of the State of Arkansas, nor does such increase make it violative of the equal protection clause of the 14th Amendment. The tax imposed is the same whether the individual is a citizen of the State of Arkansas or a citizen of the State of Tennessee. The tax would be no less if the plaintiff lived upon his farm in Crittenden County."

Section 1 of Act No. 606, 1921, provides:

"That all persons, firms or corporations who shall sell gasoline, kerosene or other products to be used by the purchaser thereof in the propelling of motor vehicles, using combustible type engines over the highways of this State, shall collect from such purchaser, in addition to the usual charge therefor, the sum of one cent (1¢) per gallon for each gallon so sold."

In Standard Oil Co. v. Brodie, supra, sustaining the tax, the court said (153 Ark. page 119, 239 S. W. 754):

"The tax is not imposed on the sale or purchase of gasoline, nor on the gasoline itself, nor even on the use of the gasoline. On the contrary, the final and essential element in the imposition of the tax is that the gasoline purchased must be used in propelling a certain kind of vehicle over the public highways. In the final analysis of this language it comes down to the point that the thing which is really taxed is the use of the vehicle of the character described upon the public highway, and the extent of the use is measured by the quantity of fuel consumed, and the tax is imposed according to the extent of the use as thus measured.

"If it had been intended merely to tax the gasoline or its use, it would have been wholly unnecessary to describe the character of the use or the place where it was to be used, and the fact that the lawmakers incorporated these elements in laying the bases of the taxation shows unmistakably that it was intended to impose a tax upon the use of the public highways by the method described. It is clear that the tax is not imposed on the seller nor upon the gasoline while in his hands, and this of itself makes it manifest that there was no intention to levy a tax upon the sale of gasoline nor upon the gasoline itself."

Act No. 501, Acts of Arkansas 1923, section 1, provides: "There is hereby imposed upon all manufacturers of and wholesale dealers in gasoline in this State a Privilege tax as hereinafter prescribed." Section 6 provides: "The said manufacturer or wholesale dealer shall pay to the Treasurer of the State of Arkansas at the time of making the report aforesaid (that provided in Section 5) a privilege of three (3) cents per gallon by this Act imposed on the aggregate amount of gasoline so sold, shipped or delivered in this State." Section 10 provided that the state treasurer should credit the moneys collected under the act, 75 per cent. to the county highway and improvement fund, and 25 per cent. to the state highway improvement fund. This act also repealed Act 606 of the General Acts of the General Assembly of the year 1921.

It appears that thereafter the General Assembly, in an extra session of 1923, passed Act No. 5 (Acts of Arkansas 1923, Special Session, p. 11). Section 35 of this act provides:

"There is hereby levied on each gallon of gasoline sold in the State for the purpose of propelling any automobile or motor vehicle on the public roads in the State the sum of four cents per gallon, and on each gallon of motor oil so sold the sum of ten cents."

Section 58 of the same act provides that any person purchasing gasoline or motor oil for agricultural, industrial, or domestic purposes, not used in operating motor vehicles, shall be entitled to a refund of four cents per gallon on such gasoline and ten cents per gallon on such motor oil. It then provides how the application for refund and the refund shall be made.

Section 1 of Act 240 of the General Assembly 1927 provided:

"Section 35 of Act No. 5 of the Extraordinary Session of the General Assembly of the State of Arkansas of the year 1923, approved October 10th, 1923 is hereby amended to read as follows:

" 'There is hereby levied on each gallon of gasoline sold in the State for the purpose of propelling any automobile or motor vehicle on the public roads in the State the sum of five cents per gallon. * * * ' "

Section 5 of this same act recites:

"Section 63 of said Act number 5 is hereby amended to read as follows:

" 'The intent and purpose of the provisions of this Act relating to gasoline tax is to provide for the collection at the source, within this State, of the tax upon gasoline used in operating or propelling motor vehicles upon the public roads and highways in this State. * * * ' "

It is now claimed that the difference in the

language used in Act 240 of 1927 eliminates as authorities on the question of its validity the cases of Standard Oil Co. v. Brodie, supra, and Pierce Oil Corporation v. Hopkins, supra, and that it is obvious that the Legislature intended to tax the gasoline and the use of the gasoline, thereby rendering the tax invalid under the Constitution of the state of Arkansas. We think that this contention cannot be sustained. Act 240 is as susceptible of the interpretation that the thing which is really taxed is the use of the public highways by the method described measured by the quantity of fuel consumed, as was the Act of 1921, which was sustained by the Supreme Court of Arkansas and the Supreme Court of the United States.

Section 8 of Act No. 11, p. 26 of the General Assembly for the year 1927, the validity of which act was sustained in Bush v. Martineau, 174 Ark. 214, 295 S. W. 9, also provides for a refund to those who purchase gasoline for agricultural, industrial, and domestic purposes, of four cents per gallon on gasoline and ten cents per gallon on motor oil. The tax on motor oil was eliminated by Act 240, but the refund provision of the law was not amended, as it no doubt should have been, by that act; so that, according to the strict letter of the statutes, those using gasoline, not for the propulsion of motor vehicles upon the public highways, are still entitled to a refund of four cents per gallon on gasoline and ten cents per gallon on motor oil; and of this situation the plaintiff also complains, claiming that the law grants a gratuity out of the taxes collected to certain individuals, and therefore is in violation of the Constitution of the United States, depriving the plaintiff of his property without due process of law, and denying him the equal protection of the law. It is obvious that the provision for refund relates to oil and gasoline which has paid the tax, and, without any specific repeal, Act 240 would impliedly repeal the provision relating to refund for motor oil. As to whether a user of gasoline for agricultural or industrial purposes would be entitled to a refund of four cents or a refund of the five-cent tax now imposed, we express no opinion. It is obvious that the present law imposing a five-cent tax imposes it only upon those using gasoline for the propulsion of motor vehicles upon the public highways, and as to the method used by the state of Arkansas for relieving the users of gasoline for other purposes of the payment of the tax we are not concerned. The tax imposed falls with substantial equality upon the users of motor vehicles upon the highways of the state, both resident and nonresident, and is not violative of the Fourteenth Amendment to the Constitution of the United States.

The plaintiff claims that the construction placed by the Supreme Court of Arkansas upon some of these acts and upon the Constitution of the state is erroneous, and should not be followed by this court. The construction of state statutes and of state Constitutions is peculiarly a matter for the state courts, and their construction will be accepted by the federal courts, as was pointed out by the trial court in his opinion, citing Stebbins v. Riley, 268 U. S. 137, 45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454; Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565; Lamoreaux v. Lamoreaux (C. C. A.) 26 F.(2d) 47. Therefore, we have concerned ourselves only with the question as to whether the acts to which attention is called are violative of the Constitution of the United States, and the plaintiff has failed to convince us that they are.

The decree appealed from is affirmed.