**CHISHOLM–RYDER CO., Inc., v. BUCK.**
No. 3443.

Circuit Court of Appeals, Fourth Circuit.
June 15, 1933.

Arthur P. Greeley, of Washington, D. C. (J. Calvin Yeatter, of Washington, D. C., on the brief), for appellant.

C. B. DesJardins, of Washington, D. C. (Melville Church, of Washington, D. C., and H. Beale Rollins, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Chisholm-Ryder Company, Inc., filed a bill of complaint in the District Court to secure an injunction restraining Benjamin I. Buck from infringement of certain United States Letters Patent issued to William E. Urschel, to wit: Patents No. 1,256,491 and No. 1,256,492, issued on February 12, 1918, for a process and a machine respectively for snipping string beans, and patent No. 1,-336,991, issued on April 13, 1920, for an improvement in the machine. It was alleged in the bill that title to these patents had become vested in the complainant by certain assignments, and that each of the patents had been infringed by the defendant. The defendant answered, denying the title of the complainant, and putting in issue the validity of the patents and the infringement thereof. The District Court dismissed the bill, after making specific findings of fact and conclusions of law, and filing an exhaustive opinion, 1 F. Supp. 268, wherein the patents in suit, and the machine made and used by the defendant were fully and accurately described, and it was held: (1) That the complainant was vested with title to the patents; (2) that the process patent, No. 1,256,491, is invalid on the ground that it covers merely the function of the machine disclosed in the machine patent, No. 1,256,492; (3) that. claims 1 and 2 of patent No. 1,256,491 are invalid as covering no more than was shown by the prior United States Patent No. 600,554 to Sanborn of 1898; and (4) that claim 3 of Patent No. 1,256,491, claims 1 and 7 of No. 1,256,492, the only claims of this patent relied on by the complainant, and claims 1, 2, and 3 of patent No. 1,336,991, the only claims of this patent relied on by the complainant, have not been infringed by the defendant.

We are in accord with the conclusion of the District Court that the bill of complaint should be dismissed. The limitations necessarily imposed upon the claims of the patents in suit, when construed in the light of the prior art, and the absence from the machine made and used by the defendant of the distinctive features of the patents in suit are fully described in the opinion of the District Judge. The failure of the complainant to sustain the charge of infringement of the claims of the machine patents, and of claim 3 of the process patent is there made manifest, and we need not repeat the discussion here. The same conclusion as to claims 1 and 2 of the process patent is reached,

when they are considered in connection with the state of the art existing when the application for the patent was filed. It is true, as pointed out in the argument of the complainant in this court, that the prior patents not set up in the defendant's answer, for instance, the patent to Sanborn, may not be used to invalidate the patents in suit for want of novelty or invention; but nevertheless these prior patents may properly be received in evidence to show the state of the art and to aid in the construction of the claims relied upon. Grier v. Wilt, 120 U. S. 412, 7 S. Ct. 718, 30 L. Ed. 712; Eachus v. Broomall, 115 U. S. 429, 6 S. Ct. 229, 29 L. Ed. 419; Morton v. Llewellyn (C. C. A.) 164 F. 693. When this is done, it becomes obvious that none of the claims of the process patent can be construed so broadly as to establish infringement thereof by the defendant.

We agree also with the conclusion of the District Court that the process patent, No. 1,256,491, is invalid, because it involves only the function of the machine described in patent No. 1,256,492. A patent may issue for a new process to be performed or carried out by a machine, and also for the machine, provided that in each case invention is found; but a patent may not issue to cover a process which involves nothing more than the operation of a piece of mechanism. Corning v. Burden, 15 How. 252, 14 L. Ed. 683; Risdon Iron & Locomotive Works v. Medart, 158 U. S. 68, 15 S. Ct. 745, 39 L. Ed. 899; Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034; Gulf Smokeless Coal Co. v. Sutton (C. C. A.) 35 F.(2d) 433; Demco v. Doughnut Machine Corp. (C. C. A.) 62 F.(2d) 23. The similarity of the claims of the process patent to those of the machine patent in the pending case is pointed out in the opinion of the District Court. The drawings in the accompanying specifications are identical. Thus it appears that the method proposed may be performed by the patented machine; but the evidence fails to indicate how the process may be carried out practicably in any independent fashion, and the result is that the process patent merely states the function or effect of the machine, and is invalid under the established rule.

A new argument is presented for the first time in the litigation in this court, in order to support the charge of infringement of the machine patent, No. 1,256,492. An attempt is made to show that the Buck machine contains an equivalent of the triangu-lar bars placed in the relatively narrow spiral channel within the perforated cylinder which constitutes the essential and distinctive feature of the patented structure. The function of the bars within the channel is to reverse the beans in falling so that after one end has been cut, the other end may also be snipped off. In the evidence in the District Court, this structure was contrasted with Buck's machine which was shown to contain a cylinder, the interior of which was quite plain and unprovided with the triangular bars or transverse plates, and hence the District Court failed to find any equivalent of the feature of the patented structure now being described. We are now told, however, that such an equivalent is to be found in the framing of the cover or door of the cylinder in the Buck machine, which consists of angle bars projecting to some slight extent into the interior of the drum. It is contended that the projections thus produced accomplish the same purpose in upending the beans in their downward course, and presenting their ends to the perforations in the cylinder. There is not a word of testimony in the record to establish this conclusion. Representatives of the complainant, possessed of mechanical skill and experience, observed the operation of the defendant's machine and described it in their testimony, but they did not suggest the point that is now raised for the first time. Our conclusion, after an examination of the drawings and of the operations of the Buck machine, is that the angle irons serve merely as framing for the door, and perform no other function.

The complainant presents to this court a motion "to receive and consider as a part of the record" United States Patent No. 1,882,481, issued October 11, 1932, to Benjamin I. Buck, on an application filed in the Patent Office June 2, 1931, together with the file wrapper and contents of the application. Since the decree was rendered September 12, 1932, and the appeal was granted on September 29, 1932, this evidence was not available at the trial below, although it was admitted by defendant that an application for a patent on his machine was at that time pending. It is claimed by the complainant that these documents will show that Buck, in the Patent Office proceedings, attached great importance to the function of four parallel rods within the cylinder, running lengthwise of his machine, as upending the bean pods and directing them towards the perforations in the side walls, while in the lower court it was insisted on his behalf that these rods were insignificant in the operation of

the machine. It is now contended that we should receive this evidence in order to show the real facts and prevent a miscarriage of justice. We are not required to decide whether this evidence might have been made available in some other way, but merely whether it should be received at this time in this court, and we may not be guided in reaching our conclusion by the disadvantage to which the defendant is subjected by the omission of the evidence from the record. It may be noted in passing that at the trial below the function of the longitudinal bars in the Buck machine was fully considered by witnesses on both sides, and that the District Judge, after careful consideration, came to the conclusion that they did not constitute an equivalent of the triangular bars in the Urschel structure. The present motion must be decided with reference to the rule that this court has no authority to receive new evidence. Ever since the system of equity jurisdiction was established, it has been the settled practice that an appellate court cannot look beyond the record before it to influence its judgment, and that no paper not before the court below can be introduced in evidence on appeal. Russell v. Southard, 12 How. 139, 158, 159, 13 L. Ed. 927. This rule was at an early time embodied in an express statutory prohibition, in the Act of March 3, 1803 (2 Stat. 244; R. S. § 698 [28 USCA § 863]), which, in its present form provides: "Upon the appeal of any cause in equity * * * no new evidence shall be received in the Supreme Court. * * *" This statute was enforced in Russell v. Southard, supra, and in Roemer v. Simon, 91 U. S. 149, 150, 23 L. Ed. 267, which held that the Supreme Court could not receive new evidence even for the more limited purpose of remanding the case to the trial court for a rehearing of the case.

In the Act of March 3, 1891, c. 517, § 11, 26 Stat. 829 (28 USCA § 228 note), which created the Circuit Courts of Appeals and transferred to them a large part of the appellate jurisdiction formerly exercised by the Supreme Court, this portion of the Act of March 3, 1803, together with all other provisions of law then in force, "regulating the methods and system of review," was made applicable to the Circuit Courts of Appeals. See The Philadelphian (C. C. A.) 60 F. 423, 426; State of Kansas v. Meriwether (C. C. A.) 171 F. 39, 41. Amongst these other provisions is R. S. § 701 (28 USCA § 876), which authorizes the Supreme Court to affirm, modify, or reverse any judgment or decree of a District Court lawfully brought before it for review, and to direct such judgment or decree to be rendered and such further proceedings to be had by the inferior court as the justice of the case may require; but it has been quite recently decided in the case of Realty Acceptance Corp. v. Montgomery, 284 U. S. 547, 551, 52 S. Ct. 215, 76 L. Ed. 476, that a Circuit Court of Appeals cannot take further proof and set aside a judgment of a District Court, if no error appears in the record, and cannot remand the case to the District Court in order that it may receive new evidence after the expiration of the term at which the judgment was rendered.

Instances are not lacking in which an appellate court has taken judicial notice of matters not in the formal record before it, as for instance, in Meccano, Ltd., v. John Wanamaker, New York, 253 U. S. 136, 141, 40 S. Ct. 463, 64 L. Ed. 822, and E. I. Du Pont de Nemours & Co. v. Richmond Guano Co. (C. C. A.) 297 F. 580, in each of which was considered a change of circumstances resulting from a reversal of a decree upon which the trial court relied. See, also, Ridge v. Manker (C. C. A.) 132 F. 599; Schevenell v. Blackwood (C. C. A.) 35 F.(2d) 421. These decisions do not run counter to the prohibition of the established rule now embodied in the federal statute that appellate proceedings cannot be converted into a trial de novo. Such would be the practical result if the pending motion should be granted in this case, for the evidence offered could not justly be received without affording to the appellee an opportunity to introduce further evidence to controvert or explain it. The motion must therefore be denied.

Affirmed.